UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FIREMAN'S FUND INSURANCE COMPANY,

Plaintiff,

-vs- Case No. 5:04-cv-175-Oc-10GRJ

KOIN KLEEN LAUNDROMAT, INC., RUTH FONGEMIE, NELSON FONGEMIE, ARTHUR LEFEBVRE, JOYCE HADLEY, as personal representative of THE ESTATE OF WILLARD WENDELL HILL, III,

Defendants.

______________________________________

**O R D E R**

This declaratory judgment action is before the Court for consideration of the parties' cross-motions for summary judgment. The motions are ripe for review and the Court concludes that Fireman's Fund Insurance Company's Motion for Summary Judgment (Doc. 32) is due to be granted, and Defendant Estate of Willard Wendell Hill, III's Motion for Summary Judgment (Doc. 30) is due to be denied.

**PROCEDURAL BACKGROUND**

The Plaintiff, Fireman's Fund Insurance Company, issued a liability policy to Ruth and Nelson Fongemie, doing business as Koin Kleen Laundromat, Inc. The Fongemies and Koin Kleen have been sued in a wrongful death action in state court causing Fireman's Fund to file this action seeking a judgment declaring that it has no duty to defend the

Fongemies or Koin Kleen in the state court action, and that there is no potential for coverage of the state court claims against the Fongemies and Koin Kleen (Doc. 1). Specifically, Fireman's Fund claims that Willard Wendell Hill, III was an employee of Koin Kleen at the time of his death and that the event of his death was excluded from coverage under the liability policy.

On October 26, 2004, Joyce Hadley, as personal representative of the Estate of Willard Wendell Hill, III, and as the Plaintiff in the pending state court litigation, moved to intervene in this case (Doc. 17). The Court granted her motion on January 10, 2005.

On May 18, 2005, Defendant-Intervenor Joyce Hadley moved for summary judgment (Doc. 30), to which the Plaintiff responded (Doc. 42). On the same date, the Plaintiff moved for summary judgment (Doc. 32), to which the Defendants have responded (Docs. 40, 41).

## STATEMENT OF FACTS

*I. The Insurance Policy*

Fireman's Fund Insurance Company issued a business liability policy to Nelson and Ruth Fongemie, who were doing business as Koin Kleen Luandromat , which was effective for the policy period of July 29, 2002 through July 29, 2003.[1]

Under the "Exclusions" section, the policy states:

---

[1] Doc. 30, Defendant-Intervenor Joyce Hadley's Motion for Summary Judgment, Part 2, Renewal Certificate for Policy Number A S2 AZC 80649645. The policy provided coverage of $1,000,000 per occurrence, up to $2,000,000 in the aggregate.

> This insurance does not apply to . . . [b]odily injury to . . . an employee or co-employee of any insured arising out of and in the course of employment by any insured; or . . . [a]ny employee, prospective employee, or past employee of any insured arising out of the employment relationship or prospective employment relationship.[2]

*II. State Suit*

Joyce Hadley, as personal representative of the Estate of Willard Wendell Hill, III, has filed suit against Koin Kleen and the Fongemies in state court.[3] The factual allegations in her state court complaint can be summarized as follows: Mr. and Ms. Fongemie were officers of Koin Kleen and actively participated in the operation and management of the laundromat. Art Lefebvre was permitted by the Fongemies to allow persons not employed or paid by Koin Kleen, including teenagers who Mr. Lefebvre befriended, to help Mr. Lefebvre with the performance of his job duties at the laundromat. In 2002 or 2003, Mr. Lefebvre "befriended" James Emmanuel Green and allowed Mr. Green to assist with his duties at Koin Kleen. Mr. Lefebvre eventually terminated his relationship with Mr. Green. Mr. Lefebvre then "befriended" Wendell Hill to assist him with his duties at Koin Kleen. After Mr. Lefebvre terminated his relationship with Mr. Green, Mr. Green was arrested and served time in the Marion County Jail for theft of a retail store. After Mr. Green served his sentence, he contacted Mr. Lefebvre to see if he could assist Mr. Lefebvre again with his

---

[2] Id. at 16.

[3] Doc. 30, Defendant-Intervenor Joyce Hadley's Motion for Summary Judgment, Part 3; Doc. 32, Plaintiff's Motion for Summary Judgment, Part 17, Amended Complaint filed in Hadley v. Koin Kleen Laundromat, Inc., filed in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida, Case No. 04-0178-CAK.

duties at the laundromat. Mr. Lefebvre told Mr. Green that he would have to talk to Mr. Hill who was his “helper” now. During the week leading up to February 13, 2003, Mr. Green called Mr. Lefebvre and asked to borrow money so that he could buy his girlfriend a Valentine’s Day gift. Mr. Lefebvre declined to lend Mr. Green any money. During the evening February 13, 2003, Mr. Lefebvre and Mr. Hill emptied the washer, dryer, and money machines inside the laundromat. Mr. Fongemie removed most of the money from the premises, but some cash remained on hand so that Mr. Lefebvre could receive his payment in cash, rather than by check. Soon after, Mr. Lefebvre and Mr. Hill went outside of Koin Kleen to move Mr. Lefebvre’s van closer to the building. While waiting outside, Mr. Green appeared in the parking lot and Mr. Lefebvre invited him inside the building. Subsequently, Mr. Green attempted to rob the laundromat, and shot and killed Mr. Hill while fleeing the premises.

In her state action, Ms. Hadley claims that the death of Wendell Hill was caused by the negligence of Koin Kleen and the Fongemies. In particular, Ms. Hadley alleges that Koin Kleen and the Fongemies were negligent because they failed to implement appropriate security measures for the handling of cash on the business premises; failed to require appropriate investigation and background checks of potential employees hired by Mr. Lefebvre; failed to provide appropriate training to its agent, Mr. Lefebvre, regarding security and hiring; paid employees in excess of $1,000 with cash rather than check; failed to use an appropriate safe or secure room on the premises; failed to use a security

transport agency for the transport and deposit of large sums of cash; and because Mr. Lefebvre allowed a known criminal to come into the locked business after hours.

*IV. Koin Kleen's Employees and "Helper"*

Nelson and Ruth Fongemie own Koin Kleen Laundromat.[4] Nelson Fongemie served as the general manager of Koin Kleen, and his duties included hiring and firing employees, taking the money out of the machines and transporting it off the premises, delivering paychecks to employees, ordering new equipment when needed, and deciding what supplies to order from various vendors.[5] Ruth Fongemie's primary role was to serve as the bookkeeper for Koin Kleen.[6]

Arthur Lefebvre was the "working manager" for Koin Kleen for sixteen years.[7] His duties included fixing machines, "doing drop-offs," handing out change, and cleaning.[8] According to Mr. Fongemie, Mr. Lefebvre has never hired or fired employees for Koin Kleen.[9] Mr. Lefebvre testified that he would take down the names of potential employees

---

4 Doc. 34, Deposition of Nelson Fongemie, pg. 6-7.

5 Id. at 57-64.

6 Doc. 33, Deposition of Ruth Fongemie, pg. 6.

7 Doc. 35, Deposition of Arthur Lefebvre, pg. 7-9.

8 Id. at 9, 58.

9 Doc. 34, Deposition of Nelson Fongemie, pg. 63-64.

for Mr. Fongemie and would participate in the interviews, but he would not decide who Koin Kleen hired, what employees were paid, or what hours employees worked.[10]

Mr. Lefebvre would permit teenagers that he knew to help him with the performance of his job duties.[11] Mr. Hill was a teenager who helped Mr. Lefebvre clean up the laundromat at the end of the day most evenings.[12] Mr. Lefebvre would supply Mr. Hill with cleaning equipment and would pay Mr. Hill "by the job" at a rate of twelve dollars for each evening he cleaned.[13] Mr. Hill would also occasionally work for Mr. Lefebvre at his son's flea market business and Mr. Lefebvre would pay Mr. Hill twenty dollars for his day's work.[14] Mr. Fongemie was aware that Mr. Hill helped Mr. Lefebvre clean up and that Mr. Lefebvre paid his "helpers" with his own money.[15] After Mr. Hill was killed, Mr. Fongemie has had several employees who were "on the books" and who helped Mr. Lefebvre clean up the laundromat before it closed.[16]

---

[10] Doc. 35, Deposition of Arthur Lefebvre, pg. 58-60.

[11] Id. at 14.

[12] Id. at 15-16, 20, 29.

[13] Id. at 16-18.

[14] Id. at 22, 25.

[15] Id. at 33, 40; Doc. 34, Deposition of Nelson Fongemie, pg. 50-51.

[16] Doc. 34, Deposition of Nelson Fongemie, pg. 47-49.

Mr. Lefebvre stated that he believed Mr. Hill was not an employee of Koin Kleen.[17] In fact, the Koin Kleen payroll and tax records for 2002 - 2003 show that only the following individuals were paid by the company: Arthur Lefebvre, Brenda L. Scott, Nelson Fongemie, Ruth Fongemie, Wyatt Sapp, Mariely Castellano, Wade Tomlin, Gary Moore, Simyra Graham, Tarrium K. Kinsler, and Tonshika M. Tucker.[18] Mr. Fongemie also testified that Koin Kleen's only employees in February 2003 were himself, his wife, Mr. Lefebvre, and Brenda Scott.[19] Mr. Fongemie stated that Mr. Hill was not his employee because he was not paying him and he did not hire him.[20]

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Celotex Corp. v. Catrett, the Supreme Court recognized that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

---

[17] Doc. 35, Deposition of Arthur Lefebvre, pg. 51.

[18] Doc. 31, Defendant-Intervenor Joyce Hadley's Memorandum in Support of her Motion for Summary Judgment, Parts 6 and 8, Koin Kleen Payroll Records; Doc. 39, Defendant-Intervenor Joyce Hadley's Supplemental Exhibit, 2000 - 2003 Tax Records.

[19] Doc. 34, Deposition of Nelson Fongemie, pg. 12.

[20] Id. at 30.

burden of proof at trial."[21] The moving party bears the initial burden of establishing the nonexistence of a triable fact issue. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[22] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[23]

## AN EMPLOYER/EMPLOYEE RELATIONSHIP

"[I]t is well-established that the question of an employer/employee relationship is generally a question of fact, and therefore a question for the trier of fact."[24] However, there are circumstances where the undisputed facts will demonstrate the existence or nonexistence of an employment relationship as a matter of law, and thereby provide a basis to properly grant summary judgment.[25]

## DISCUSSION

The determinative issue in this case relates to whether Wendell Hill was an employee of Koin Kleen – if he was, than the business liability policy issued by the Plaintiff

---

[21] 477 U.S. 317, 322 (1986).

[22] Rollins v. Techsouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).

[23] Celotex, 477 U.S. at 324.

[24] Harper ex. rel. Daley v. Toler, 884 So.2d 1124, 1129 (Fla. 2d DCA 2004).

[25] See Id.

would not provide coverage to Koin Kleen for the death of Wendell Hill, and the Plaintiff would not be required to defend Koin Kleen and its owners, the Fongemies, in the pending state court lawsuit involving Mr. Hill's death.

Federal courts are required to apply state law when construing insurance policies.[26] Under Florida law, "the construction of an insurance policy is a question of law for the court."[27] If the language of the policy is ambiguous or otherwise susceptible to more than one meaning, the language must be construed in favor of the insured.[28] However, this rule of construction "does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."[29] "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite."[30] Furthermore, "Florida law requires that insurance policies be read for their plain language and that every provision be given its full meaning and effect."[31]

---

26 Travelers Indem. Co. v. PCR Inc., 326 F.3d 1190, 1193 (11th Cir. 2003).

27 Jones v. Utica Mut. Ins. Co., 462 So.2d 1153, 1157 (Fla. 1985).

28 See State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla. 1986).

29 Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979).

30 Id.

31 PCR, 326 F.3d at 1193.

When interpreting the term "employee" in an employee exclusion clause, the term should be accorded its plain and ordinary meaning.[32] In addition, in determining the meaning of the term "employee" in an employee exclusion clause, it seems reasonable to follow the standards governing the master/servant, independent contractor, or borrowed servant relationship.[33] It is appropriate, in other words, to borrow the law of the state governing an employer's vicarious responsibility for its "employees" and use the same principles in determining an employer's liability to "employees."

"Florida law . . . has long recognized the existence of subemployee or subservant relationships and the vicarious liability of an employer for the negligence of a subemployee or subservant."[34] A master/servant relationship (or employer/employee relationship) may be established

> by implication by the employment of a subservant by a servant to perform duties for the master, where the master has entrusted the servant with a task which cannot be performed by him within a reasonable time, where the business is of such a nature as to require the assistance of others, where there is an emergency, or *where the authority to employ and use a subservant may be implied from the nature of the business or the course of trade*. In these circumstances, the servant may employ a subservant to assist in the furtherance of the master's business, even though authority to hire the subservant has not been expressly given by the master. And under these conditions the master may be held liable for the tortious acts of the

---

32 Nateman v. Hartford Cas. Ins. Co., 544 So.2d 1026, 1028 (Fla. 3d DCA 1989) (holding that the term "employee" should be given its "common, plain, and ordinary" meaning).

33 See Travelers Ins. Co. v. Brown, 338 F.2d 229, 237 (5th Cir. 1968) (applying Louisiana law).

34 Harper, 884 So.2d at 1132.

subservant, if they have been committed in the course of the employment.[35]

In other words, where an employee has express or implied authority to hire a subservant or an assistant, the master may be held liable for the tortious acts of the subservant if they have been committed in the course of the employment.[36] In Harper ex. rel. Daley v. Toler, a Florida district court succinctly described the subservant relationship:

> A subservant is a person appointed by a servant empowered to do so, to perform functions undertaken by the servant for the master and subject to the control as to his physical conduct both by the master and by the servant, but for whose conduct the servant agrees with the principal to be primarily responsible. The subservant relationship is not a common one, but it exists '*where a person is paid by the piece or job and is allowed by the master to select assistants at his own expense, it being understood that the servant is to direct the conduct of the subservant who is to be subject also to the superior power of control which the master may exercise*.'[37]

However, "[t]he general rule which holds an employer liable under the doctrine of respondeat superior for torts committed within the real or apparent scope of the employer's business does not apply in a situation . . . when an employee hires a helper which his

---

[35] Jacobi v. Claude Nolan, Inc., 122 So.2d 783, 787-88 (Fla. 1st DCA 1960) (emphasis added); see also Coto v. Anipecu, Inc, 371 So.2d 183 (Fla. 3d DCA 1979).

[36] See Gold Coast Parking, Inc. v. Brownlow, 362 So.2d 288 (Fla. 3d DCA 1978) (holding employer liable for negligence of subagent when subagent was implicitly authorized by the employer).

[37] Harper, 884 So.2d at 1132 (quoting the Restatement of the Law of Agency) (emphasis added).

employer neither directed in fact, nor could be considered from the nature of the employment to have authorized or expected the employee to hire."[38]

In this case, the pertinent question is whether Mr. Lefebvre's relationship with Mr. Hill established an employment relationship between Mr. Hill and Koin Kleen and its owners.[39] The Court concludes as a matter of law that it does. The evidence proves that Koin Kleen and its owners sanctioned the use of an assistant by Mr. Lefebvre. Mr. Fongemie admitted that he knew Mr. Lefebvre had hired a helper, and saw Mr. Hill cleaning at the laundromat on occasion. Although Mr. Fongemie claims that he had nothing to do with Mr. Hill helping Mr. Lefebvre with his cleaning duties, he implicitly authorized Mr. Lefebvre to hire this helper and could have exercised control over Mr. Hill by telling Mr. Lefebvre he was no longer permitted to hire assistants.

Accordingly, as a matter of law, the undisputed facts prove that Mr. Hill had an employment relationship with Koin Kleen and the Fongemies because Mr. Hill was a subservant or subagent of Koin Kleen and the Fongemies. Since the policy at issue excludes coverage for injuries to employees which arise out of the scope of their

---

[38] Higgins v. Investors Acceptance Co. of Miami, 287 So.2d 724, 726 (Fla. 3d DCA 1974).

[39] The undisputed facts clearly demonstrate that Mr. Hill and Mr. Lefebvre had an employer/employee relationship. There was an understanding between the two that Mr. Hill would come to the laundromat most evenings to clean, and in exchange, Mr. Lefebvre would pay him twelve dollars per evening.

employment,[40] there is no coverage under the policy for the death of Mr. Hill, and Fireman's Fund has no duty to defend Koin Kleen and the Fongemies in the litigation arising from Mr. Hill's death.

## CONCLUSION

Accordingly, upon due consideration, it is ordered that:

(1) Fireman's Fund Insurance Company's Motion for Summary Judgment (Doc. 32) is GRANTED;

(2) Defendant Estate of Willard Wendell Hill, III's Motion for Summary Judgment (Doc. 30) is DENIED;

(3) The liability policy issued to Koin Kleen Laundromat and Ruth and Nelson Fongemie by Fireman's Fund Insurance Company does not provide coverage for the death of Willard Wendell Hill, III, and Fireman's Fund Insurance Company has no duty to defend Koin Kleen Laundromat and Ruth and Nelson Fongemie in connection with any suit arising from Willard Wendell Hill, III's death; and

---

[40] None of the parties pursue the argument that even if Mr. Hill were an employee of Koin Kleen, he was not acting within the scope of his employment. Nonetheless, the Court concludes that the undisputed facts show that Mr. Hill was acting within the scope of his employment when he was shot and killed while helping Mr. Lefebvre close the Koin Kleen Laundromat. See Sussman v. Florida East Coast Properties, Inc., 557 So.2d 74, 75-76 (Fla. 3d DCA 1990) ("The conduct of an employee is within the scope of his employment, for the purpose of determining the employer's vicarious liability to third persons injured by the employee, only if (1) the conduct is of the kind the employee is hired to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master.").

(4) the Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file in this matter.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 10th day of August, 2005.

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record